# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JUDY ARCHULETA, AS PERSONAL
REPRESENTATIVE FOR THE
WRONGFUL DEATH ESTATE OF
ROSANA ARCHULETA, Deceased,

      Plaintiff,

vs.                                                                                          No. CIV 10-1150 JB/ACT

TAOS LIVING CENTER, LLC,
MDA CONSULTANTS, LLC,
JACK M. STOLIER, DANIEL
DAIGLE, AND PAUL REID.

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion to Remand, filed December 29, 2010 (Doc. 5); and (ii) the Defendant's Motion for Leave to File Supplemental Brief in Support of Defendant's Opposition to Plaintiff's Motion to Remand, filed February 15, 2011 (Doc. 17)("Supplemental Brief"). The Court held a hearing on May 11, 2011. The primary issues are: (i) whether the Court has diversity jurisdiction over this case, because Plaintiff Judy Archuleta, as personal representative of Rosana Archuleta, deceased, fraudulently joined Defendant Paul Reid; (ii) whether, if the Court finds that J. Archuleta did not fraudulently join Reid, the Court should award J. Archuleta costs and fees incurred as a result of the removal; and (iii) whether the Court should grant the Defendants leave to file their Supplemental Brief. The Court will grant in part and deny in part J. Archuleta's motion to remand. The Court finds that J. Archuleta did not fraudulently join Reid, because there is a possibility that J. Archuleta can establish a cause of action for negligence against Reid. Because the Court finds that J. Archuleta did not fraudulently join Reid,

it does not currently have jurisdiction over this matter.  The Court will thus remand this case to the Eighth Judicial District Court of New Mexico.  The Court will not, however, award J. Archuleta costs and attorneys' fees, because it cannot say that the Defendants lacked an objectively reasonable basis for seeking removal.  Because, at the hearing, J. Archuleta represented that she did not oppose the Court granting the Defendants' motion, the Court will grant the motion.

## FACTUAL BACKGROUND

R. Archuleta was a resident of a nursing home known as the Taos Living Center, LLC in Taos, New Mexico.  See Complaint for Wrongful Death, Negligent, Misrepresentation, Violation of the Unfair Trade Practices Act and Punitive Damages ¶ 1, at 1, filed December 3, 2010 (Doc. 1-3)("Complaint").   J. Archuleta brings the suit in her capacity as personal representative of R. Archuleta's estate.  See Complaint ¶ 2, at 1.  On April 16, 2008, R. Archuleta suffered a fall, which resulted in a hip fracture, and, after her hip was repaired, she was transferred to Taos Living Center, where she was to receive rehabilitation.  See Plaintiff's Brief in Support of Motion to Remand at 1-2, filed December 28, 2010 (Doc. 6)("Brief"); Defendants' Supplemental Brief in Response and Opposition to Plaintiff's Motion for Remand at 1, filed February 15, 2011 (Doc. 17-1)("Supplemental Brief").   In the Complaint, J. Archuleta asserts that, while R. Archuleta was in the Defendants' care at Taos Living Center she suffered injuries and harm -- including clostridium difficile, diarrhea, bedsores, septic shock, humiliation, and mental anguish -- which required medical attention and hospitalization, that R. Archuleta's overall health deteriorated, and that she died on May 9, 2008.  See Complaint ¶¶ 19-21, at 5.  The Complaint alleges causes of action for wrongful death, negligence, negligent or intentional misrepresentation, violation of the Unfair Trade Practices Act, N.M.S.A. 1978, §§ 57-12-1 through 57-12-26, and punitive damages.  See Complaint, Counts I-II, IV-VI.

## PROCEDURAL BACKGROUND

J. Archuleta filed her Complaint on October 6, 2010 in the Eighth Judicial District in the County of Taos, New Mexico.  See Doc. 1-3.  The Complaint states that, whenever the term "Defendants" or "Taos Living Center" is used, the term refers to and includes all "named Defendants in this lawsuit."   Complaint ¶ 9, at 3.   The Complaint refers throughout to the Defendants' acts and omissions.  It does not state specific allegations against any of the Defendants.

On December 3, 2010,[1] Taos Living Center filed a Notice of Removal, to which all the other Defendants consented, alleging that the Court had jurisdiction over the action based on diversity of citizenship.  See Notice of Removal at 1.  The Defendants allege that J. Archuleta, as a New Mexico citizen,[2] is a citizen of a different state from the properly named Defendants.  In the Notice of Removal, the Defendants assert that Stolier and Daigle were citizens of Louisiana when the action was filed.  They assert that MDA Consultants is a limited liability company whose sole member is Daigle, and thus, MDA Consultants, LLC is a citizen of Louisiana.  See Carden v. Arkoma Assocs., 494 U.S. 185, 195 (1990); Zufelt v. Isuzu Motors Am., LCC, 727 F. Supp. 2d 1117, 1127 (D.N.M.2009)(Browning, J.)("A limited liability company is a citizen of every state of citizenship of any of its members." (citation omitted)).  They assert that Parentis Salus Provido, LLC, which has six owners, all of whom were citizens of Louisiana at the time the action was filed, wholly owns Taos Living Center, and thus that Taos Living Center is a citizen of Louisiana.  They state that Reid

---

[1] Taos Living Center and the other Defendants MDA Consultants, LLC, Jack M. Stolier, Daniel Daigle, and Reid, were served with J. Archuleta's Complaint on November 3, 2010. See Notice of Removal at 2, filed December 3, 2010 (Doc. 1).

[2] Although the Defendants rely on J. Archuleta's citizenship, 28 U.S.C. § 1332 states that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent."  28 U.S.C. § 1332(c)(2).  R. Archuleta was also a New Mexico citizen. See Complaint ¶ 1, at 1.

is a citizen of New Mexico, but argue that he is improperly joined in the suit.  They assert that Reid is the administrator of the Taos Living Center, that he is not a manager or member of Taos Living Center and that he "has no other relation to the case outside his capacity as an employee of Taos Living Center."  Notice of Removal at 3.  They assert that "[n]o allegation is directed to . . . Reid outside his capacity as an employee of Taos Living Center."  Notice of Removal at 4.

On December 28, 2010, J. Archuleta filed the Plaintiff's Motion to Remand.  See Doc. 5. J. Archuleta asks the Court to remand the case to the Eighth Judicial District Court and to award her attorney fees and costs under 28 U.S.C. § 1447(c).  On the same day, J. Archuleta filed the Plaintiff's Brief in Support of Motion to Remand.  See Doc. 6.[3]  In her Brief, J. Archuleta argues that removal was improper, because no federal jurisdiction currently exists.  She argues that all of her causes of action are based upon New Mexico case law and statutes, and that her causes of action do not involve any federal questions.  She further argues that the Defendants have failed to show that Reid's joinder was fraudulent.  J. Archuleta also argues that the Defendants should bear the costs of the allegedly improvident removal.

On January 18, 2011, the Defendants filed the Defendants' Response to Plaintiff's Motion for Remand.  See Doc. 9 ("Response").  The Defendants argue that fraudulent joinder exists, because J. Archuleta has no good-faith intention to prosecute her claim against Reid.  They argue that, other than one paragraph in J. Archuleta's Complaint, there are no allegations specifically pled against Reid.  They argue that the record shows that J. Archuleta can have no real intention in pursuing her

---

[3] In her Brief, J. Archuleta asks the Court to remand her case to the Fourth Judicial District for the State of New Mexico.  In the Plaintiff's Reply Brief in Support of Motion to Remand, filed February 18, 2011 (Doc. 18), J. Archuleta states that she inadvertently requested remand to the Fourth Judicial District, but that this request was incorrect and that she seeks to remand the case to the Eighth Judicial District, where the case was originally filed.

claim against Reid.

On February 15, 2011, the Defendants filed the Defendant's Motion for Leave to File Supplemental Brief in Support of Defendant's Opposition to Plaintiff's Motion to Remand. See Doc. 17.  The Defendants attached the Defendants' Supplemental Brief in Response and Opposition to Plaintiff's Motion for Remand to their motion.  See Doc. 17-1.  In their Supplemental Brief, the Defendants argue that the Court must look to Louisiana limited liability law to determine the Defendants' liability and that Reid is shielded from liability under the law regarding limited liability companies.  The Defendants also argue that J. Archuleta fails to establish any other right of action against Reid as administrator and employee of Taos Living Center.  The Defendants argue that J. Archuleta has no good-faith claim against Reid, that Reid's inclusion as a Defendant must be deemed a fraudulent joinder, and that he must be disregarded for the purposes of determining diversity jurisdiction.

On February 18, 2011, J. Archuleta filed the Plaintiff's Reply Brief in Support of Motion to Remand.  See Doc. 18.  J. Archuleta argues that the Defendants failed to meet their heavy burden for removal.  J. Archuleta also argues that a legal and factual basis exists for the joinder of Reid, and that she has sufficiently established a negligence claim against Reid.  J. Archuleta also argues that the Defendants should bear the costs of their improvident removal, because the removal was objectively unreasonable.

## LAW REGARDING REMOVAL AND REMAND

If a civil action filed in state court satisfies the requirements for original federal jurisdiction, the defendant may invoke 28 U.S.C. § 1441(a) to remove the action to the federal district court "embracing the place where such action is pending."  28 U.S.C. § 1441(a).  See Huffman v. Saul Holdings Ltd. P'ship., 194 F.3d 1072, 1076 (10th Cir. 1999)("When a plaintiff files in state court

a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant or defendants may remove the action to federal court . . . .")(quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996)).  Under 28 U.S.C. § 1332(a), a federal district court possesses original subject-matter jurisdiction over a case when the parties are diverse in citizenship and the amount in controversy exceeds $75,000.00.  See 28 U.S.C. § 1332(a); Johnson v. Rodrigues, 226 F.3d 1103, 1107 (10th Cir. 2000).  Diversity between the parties must be complete.  See Caterpillar Inc. v. Lewis, 519 U.S. at 68; Radil v. Sanborn W. Camps, Inc., 384 F.3d 1220, 1225 (10th Cir. 2004).

To remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied.  "It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." Pritchett v. Office Depot, Inc., 404 F.3d 1232, 1235 (10th Cir. 2005)(citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09 (1941), and United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280 (10th Cir. 2001)).  "All doubts are to be resolved against removal."  Fajen v. Found. Reserve Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982).  "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).

"[A] fraudulent joinder analysis [is] a jurisdictional inquiry."  Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d 1242, 1247 (10th Cir. 2004).  "A district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent."  Baeza v. Tibbetts, Civ. No. 06-0407, 2006 U.S. Dist. LEXIS 95317, at *7 (D.N.M. July 7, 2006)(Vazquez, J.).  The Supreme Court of the United States has stated: "Merely to traverse

-6-

the allegations upon which the liability of the resident defendant is rested or to apply the epithet 'fraudulent' to the joinder will not suffice: the showing must be such as compels the conclusion that the joinder is without right and made in bad faith." Chesapeake & O.R. Co. v. Cockrell, 232 U.S. 146, 152 (1914).  The United States Court of Appeals for the Tenth Circuit has explained that allegations of fraudulent joinder complicate the analysis whether removal is proper, because, "[w]hile a court normally evaluates the propriety of a removal by determining whether the allegations on the face of the complaint satisfy the jurisdictional requirements, fraudulent joinder claims are assertions that the pleadings are deceptive." Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x 911, 913 (10th Cir. 2006)(unpublished opinion).[4]   In cases where fraudulent joinder is asserted, the Tenth Circuit instructs that the court should "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964)(citations omitted).

The party asserting fraudulent joinder bears the burden of proof.  See Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *1 (10th Cir. 2000)(Table)(unpublished opinion)("The case law places a heavy burden on the party asserting fraudulent joinder.").  "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty." Couch v. Astec Indus., Inc., 71 F. Supp. 2d 1145, 1146-47 (D.N.M. 1999)(Baldock, J.).

The last published Tenth Circuit decision to state the burden of proof for demonstrating fraudulent joinder was issued over forty years ago in Smoot v. Chicago, Rock Island & Pac. R.R.

---

[4] Tenth Circuit rule 32.1(A) states: "The citation of unpublished decisions is permitted to the full extent of the authority found in Fed. R. App. P. 32.1.  Unpublished decisions are not precedential, but may be cited for their persuasive value."

Co., 378 F.2d 879 (10th Cir. 1967).  The Tenth Circuit requires that fraudulent joinder be "established with complete certainty upon undisputed evidence."  Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F.2d at 882.  In Smoot v. Chicago, Rock Island & Pac. R.R. Co., the Tenth Circuit stated two bases for finding fraudulent joinder: (i) "[t]he joinder of a resident defendant against whom no cause of action is stated is patent sham;" or (ii) "though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists."  Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F.2d at 882 (quoting Dodd v. Fawcett Pubs., Inc., 329 F.2d 82, 85 (10th Cir. 1964)).  In Smoot v. Chicago, Rock Island & Pac. R.R. Co., the Tenth Circuit found fraudulent joinder because the non-liability of the joined party was "established with complete certainty upon undisputed evidence."  378 F.2d at 882.  "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty."  Id. at 882.  In Smoot v. Chicago, Rock Island & Pac. R.R. Co., the plaintiff died when his car collided with a freight train.  The plaintiff's estate sued the railroad company and joined a non-diverse alleged employee as a defendant.  It was undisputed in Smoot v. Chicago, Rock Island & Pac. R.R. Co., that the diversity-destroying party's employment with the railroad company had "terminated almost fifteen months before the collision and that he was in no way connected with the acts of negligence ascribed to him."  378 F.2d at 881.

In recent unpublished decisions, the Tenth Circuit has adopted two different articulations of the burden of proof for fraudulent joinder, both from the United States Court of Appeals for the Fifth Circuit.  In Montano v. Allstate Indemnity Co., the Tenth Circuit quoted favorably from Hart v. Bayer Corp., 199 F.3d 239 (5th Cir. 2000), which stated:

> To prove their allegation of fraudulent joinder [the removing parties] must

demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party], in state court.  In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party.  We are then to determine whether that party has any possibility of recovering against the party whose joinder is questioned.

Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *4-5 (quoting Hart v. Bayer Corp., 199 F.3d at 246)(quotation omitted; brackets in original).  The Tenth Circuit stated that the standard for proving fraudulent joinder "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent fraudulent joinder, should be left to the state court where the action commenced."  Montano v. Allstate Indemnity Co., 211 F.3d 1278, 2000 WL 525592, at *2.  The Tenth Circuit in Montano v. Allstate Indemnity Co. also quoted from Batoff v. State Farm Ins. Co., 977 F.2d 848 (3d Cir. 1992), which stated: "A claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction."  Batoff v. State Farm Ins. Co., 977 F.2d at 853.

In Nerad v. AstraZeneca Pharms., Inc., the Tenth Circuit adopted a different articulation of the burden of proof.  The Tenth Circuit stated that, where fraudulent joinder is claimed, "the court must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant."  Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913 (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393 (5th Cir. 2000)).  The Tenth Circuit explained that "[a] 'reasonable basis' means just that: the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law."  Nerad v. AstraZeneca Pharms., Inc., 203 Fed. Appx. at 913.

The Fifth Circuit recognized the inconsistencies in the standard for fraudulent joinder and

directly addressed the problem in Travis v. Irby, 326 F.3d 644 (5th Cir. 2003), stating:

> Neither our circuit nor other circuits have been clear in describing the fraudulent joinder standard.  The test has been stated by this court in various terms, even within the same opinion.  For example, the Griggs [v. State Farm Lloyds, 181 F.3d 694 (5th Cir. 1999)] opinion states, "To establish that a non-diverse defendant has been fraudulently joined to defeat diversity, the removing party must prove . . . that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the non-diverse defendant in state court."  181 F.3d at 699 [citations omitted].  The Griggs opinion later restates that test as follows -- "Stated differently, we must determine whether there is any reasonable basis for predicting that [the plaintiff] might be able to establish [the non-diverse defendant's] liability on the pleaded claims in state court."  181 F.3d at 699 [citations omitted].  Similarly, in summing up federal law, Moore's Federal Practice states at one point: "To establish fraudulent joinder, a party must demonstrate … the *absence of any possibility* that the opposing party has stated a claim under state law."  16 Moore's Federal Practice § 107.14[2][c][iv][A] (emphasis added).  It then comments: "The ultimate question is whether there is arguably a *reasonable basis* for predicting that state law might impose liability on the facts involved."  Id. (emphasis added).  Although these tests appear dissimilar, "absolutely no possibility" vs. "reasonable basis," we must assume that they are meant to be equivalent because each is presented as a restatement of the other.

Travis v. Irby, 326 F.3d at 647 (emphasis in original).  The Fifth Circuit has settled upon the phrasing that:

> the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004)("To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.").  In Zufelt v. Isuzu Motors America, L.C.C., 727 F. Supp. 2d 1117, 1124 (D.N.M. 2009)(Browning, J.), the Court previously addressed the standard courts should use when addressing fraudulent joinder, and found that, to establish that a party was fraudulently joined, a defendant has the burden of demonstrating that "there is no possibility that the plaintiff would be able to establish a cause of action" against the party alleged to be fraudulently joined.

-10-

Zufelt v. Isuzu Motors Am., L.C.C., 727 F. Supp. 2d at 1124-25 (citing Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 525592, at *4-5).

An order to remand by a district court based on a finding of fraudulent joinder is not reviewable by the Tenth Circuit.  See Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913 (holding that, because the district court remanded based on its conclusion that it lacked subject-matter jurisdiction at the time of removal, the Tenth Circuit was precluded from reviewing the order pursuant to 28 U.S.C. § 1447(d)).  The fraudulent-joinder inquiry on a motion to remand is a subject-matter jurisdiction inquiry.  See Albert v. Smith's Food & Drug Ctrs., Inc., 356 F.3d at 1247.

## ANALYSIS

J. Archuleta asks the Court to remand this matter to the Eighth Judicial District Court, because no federal jurisdiction currently exists.  The Defendants assert that the Court has diversity jurisdiction over the case, because J. Archuleta fraudulently joined Reid.  The Court finds that J. Archuleta did not fraudulently join Reid, because there is a possibility that J. Archuleta can establish a cause of action for negligence against Reid.  Because the Court finds that J. Archuleta did not fraudulently join Reid, it does not currently have jurisdiction over this matter.  The Court will thus remand this case.  The Court will not, however, award J. Archuleta costs and attorneys fees, because it cannot say that the Defendants lacked an objectively reasonable basis for seeking removal.

**I.    THE COURT WILL REMAND THE CASE, BECAUSE THE DEFENDANTS HAVE NOT SHOWN WITH COMPLETE CERTAINTY THAT J. ARCHULETA FRAUDULENTLY JOINED REID.**

The Court will remand the case, because it finds that J. Archuleta did not fraudulently join Reid.  "To justify removal based on diversity jurisdiction, a defendant must plead a claim of fraudulent joinder with particularity and prove the claim with certainty."  Couch v. Astec Inds., Inc., 71 F. Supp. 2d at 1146-47.

> While <u>Montano v. Allstate Indemnity Co.</u> and <u>Nerad v. AstraZeneca Pharmaceuticals, Inc.</u> are unpublished Tenth Circuit cases, the Court concludes that, read together and informed by the Fifth Circuit's opinion in <u>Smallwood v. Illinois Central Railroad Co.</u>, they represent the proper standard that the Court should apply when a removing defendant argues that the plaintiff has fraudulently joined a non-diverse party -- that "remand is required if any one of the claims against the non-diverse defendant . . . is possibly viable."

<u>Zufelt v. Isuzu Motors America, L.C.C.</u>, 727 F. Supp. 2d at 1128 (citing <u>Monsanto v. Allstate Indemnity Co.</u>, 2000 WL 525592, at *2; <u>Nerad v. AstraZeneca Pharms., Inc.</u>, 203 F. App'x at 913 ("As we read the order, the [district] court determined that success was reasonably possible at the time of removal because, although the plaintiff might be required to amend his complaint, that amendment would be allowed as a matter of course.")). <u>Monsanto v. Allstate Indemnity Co.</u> and <u>Nerad v. AstraZeneca Pharms., Inc.</u> are in accord with <u>Smoot v. Chicago, Rock Island & Pac. R.R. Co.</u>, which although over forty-years old, is the last significant published Tenth Circuit decision on fraudulent joinder. <u>Smoot v. Chicago, Rock Island & Pac. R.R. Co.</u> requires that fraudulent joinder be "established with complete certainty upon undisputed evidence." 378 F.2d at 882.

Although J. Archuleta's Complaint employs group pleading, she may possibly state a viable claim against Reid. The Defendants argue that J. Archuleta's Complaint comprises twenty pages and sixty-nine paragraphs, but that "not one sentence refers to any specific claim regarding" Reid. Response at 2. They argue that, because J. Archuleta has not specifically pled allegations against Reid, and because Reid was merely an employee of Taos Living Center at the time of R. Archuleta's admission, J. Archuleta does not have any facts or contentions regarding Reid's culpability and thus she can have no real intention to prosecute her claims against Reid. J. Archuleta's Complaint states that Reid "was the Administrator of Taos Living Center at all times material to this lawsuit," and that, "[a]s Administrator, . . . Reid was required to be licensed by the State of New Mexico and was responsible for managing the facility pursuant to 42 C.F.R. § 483.75." Complaint ¶ 8, at 3. It

further states that, whenever the term "Defendants" or "Taos Living Center" is used in the Complaint, the term refers to and includes all "named Defendants in this lawsuit." Complaint ¶ 9, at 3. The Complaint refers throughout to the Defendants' acts and omissions. The Complaint is an example of a group-pleading complaint -- it attributes all actions to the Defendants collectively, failing to identify, within each count, the particular Defendant alleged to have acted. This Court has previously discussed group pleading and the pleading standard in federal court in the context of a motion to dismiss. See Two Old Hippies, LLC v. Catch the Bus, LLC, No. CIV 10–0459 JB/RLP, 2011 WL 931302 (D.N.M. Feb. 11, 2011)(Browning, J.)(finding that the plaintiff did not set forth facts showing that the individual defendants were individually liable, and dismissing the claims against the individual defendants, because, without "specifying which Individual Defendants engaged in which alleged action, the Court is unable to discern whether the Individual Defendants 'directed, controlled, approved or ratified the activit[ies], such that the Court c[ould] plausibly infer that they 'c[ould] be held personally liable'")(citation omitted). In Robbins v. Oklahoma, 519 F.3d 1242 (10th Cir. 2008), the Tenth Circuit granted a motion to dismiss for failure to provide fair notice under rule 8 in part because the complaint failed to differentiate among the defendants, alleging instead violations by "the defendants":

> We reiterate that "[c]ontext matters in notice pleading. Fair notice under Rule 8(a)(2) depends on the type of case." Phillips [v. County of Allegheny, 515 F.3d 224, 239-40 (3d Cir.2008) ]. In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state. See Twombly, 127 S.Ct. at 1970–71 n.10.

519 F.3d at 1249-50 (addressing a motion to dismiss). See Smith v. United States, 561 F.3d 1090, 1104 (10th Cir. 2009)(addressing a motion to dismiss)(quoting Robbins v. Oklahoma, 519 F.3d at

1249-50); <u>Bryson v. Gonzales</u>, 534 F.3d 1282, 1290 (10th Cir. 2008)("Finally, there are also some conclusory allegations that simply name the 'Defendants' generically . . . . But none of these allegations are helpful in figuring out what facts Mr. Bryson means to allege about Mr. Gonzales's conduct" (addressing a motion to dismiss)(quoting <u>Robbins v. Oklahoma</u>, 519 F.3d at 1249-50)). <u>See</u> <u>also</u> <u>In re Thornburg Mortg., Inc. Securities Litigation</u>, 695 F. Supp. 2d 1165, 1199-1200 (D.N.M. 2010)(Browning, J.)(addressing the subject of "group pleading" under the Private Securities Litigation Reform Act of 1995, Pub.L. No. 104–67, 109 Stat. 737, codified at 15 U.S.C. § 78u-4, and stating that it "is not prepared to judicially declare that the PSLRA forbids all instances of group pleading," and that "group pleading may still be permissible and useful when pleading conduct and omissions," but "plaintiffs run a substantial risk when they rely on group pleading to show scienter"). In addressing whether a non-diverse party was fraudulently joined, however, the Court does not apply the same standard that it must apply in addressing a motion to dismiss. <u>Compare</u> <u>Smith v. United States</u>, 561 F.3d 1090, 1097 (10th Cir. 2009)(stating that, when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor and dismiss only where the complaint does not allege sufficient facts to state a claim to relief that is plausible on its face), <u>with</u> <u>Smoot v. Chicago</u>, 378 F.2d at 882 (stating that a joinder of a resident defendant is fraudulent "if in fact no cause of action exists," and that "the issue must be capable of summary determination and be proven with complete certainty"), <u>and</u> <u>Monsanto v. Allstate Indemnity Co.</u>, 2000 WL 525592, at *2 (stating that " remand is required if any one of the claims against the non-diverse defendant . . . is possibly viable"). Also, ultimately although the Court is limited to looking at the four corners of the Complaint to determine a motion to dismiss, and must convert the motion to a

-14-

summary judgment motion to consider extrinsic evidence, on a motion to remand for lack of jurisdiction involving the fraudulent joinder and the law of diversity, the Court is to consider whether there "is no possibility that [the plaintiff] would be able to establish a cause of action" against the party alleged to be fraudulently joined.  Montano v. Allstate Indem. Co., 211 F.3d 1278, 2000 WL 1278, at *4-5.  Although the Court might grant a motion to dismiss J. Archuleta's claims against Reid, because, under federal pleading standards, her Complaint does not sufficiently state a cause of action against him under the federal court's new, more stringent pleading requirements, it would dismiss her claims against him without prejudice and would allow her the opportunity to amend her Complaint.  That J. Archuleta's Complaint employs group pleading, and does not contain allegations specifically directed towards Reid, is not determinative in the Court's fraudulent joinder analysis, because the question before the Court is whether "any one" of J. Archuleta's claims is "possibly viable."  See Nerard v. AstraZeneca Pharmaceuticals, Inc., 203 F. App'x at 914 (stating that, although the district court considered whether future amendments might allow the plaintiff to state his claims with sufficient particularity to satisfy rule 9(b), "it did so only to determine whether there was a possibility that a non-diverse party could be liable to the plaintiff in state court").  At this stage, the Court believes the proper standard is not to determine whether J. Archuleta has yet stated a "possibly viable" claim, but to decide whether she can state a "possibly viable" claim.  A claim is "possibly viable" if, with amendment it would state a cause of action.[5]  The Court will thus determine whether there is a possibility that any of J. Archuleta's claims against Reid are viable,

---

[5] This liberal rule is also dictated by the rules for remand, and not just the rules for fraudulent joinder.  See Pritchett v. Office Depot, Inc., 404 F.3d at 1235 ("It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." (citation omitted)).

either in state court,[6] or in federal court under an amended complaint.

There is a possibility that J. Archuleta has stated or could, with amendment, state a viable claim against Reid. The Defendants argue that, under N.M.S.A. 1978, § 53-19-47A, the Court must look to Louisiana limited liability law to determine Reid's liability. N.M.S.A. 1978, § 53-19-47A states that, "[s]ubject to the constitution of New Mexico, the laws of the state or other jurisdiction under which a foreign limited liability company is organized shall govern its organization and internal affairs and the liability of its managers and members."[7] N.M.S.A. 1978, § 53-19-47A. As the Defendants strenuously argue, however, Reid is not a manager or member of Taos Living Center or MDA Consultants. See Response at 5 (stating that Reid is a mere employee of Taos Living Center and that he does not have any ownership or control over Taos Living Center); Supplemental Brief at 3 ("**Paul Reid Is An Administrator, Not A 'Manager' Or 'Member'** . . . .")(bold in original); Supplemental Brief at 6 ("As set forth in the Affidavit of Paul Reid, he is a mere employee and does not meet the statutory definition of a manger under Louisiana or New Mexico law."); Supplementary Affidavit of Paul Reid ¶¶ 1-7, at 1-2 (sworn February 15, 2011), filed February 15, 2011 (Doc. 17-1)(stating that he is an employee of Taos Living Center that he is not an owner of Taos Living Center that he is not a manger of Taos Living Center and that he is not a manger or

---

[6] New Mexico's rules of pleading are more relaxed than the rules of pleading in federal court. See San Juan Arg. Water Users Ass'n v. KNME-TV, No. 32,139, 2011 WL 1261374, at *9 (N.M. 2011)(stating that there are fundamental differences between federal and New Mexico's rules of pleading); State v. Badoni, 133 N.M. 257, 261, 62 P.3d 348, 352 (Ct. App. 2002)(stating that the federal system of pleading requires considerably more detail than that required under state law).

[7] New Mexico statutes define a "manager" as "the person designated as manager in accordance with the articles of organization or an operating agreement." NMSA 1978, § 53-19-2L. They define a "member" as "a person who has been admitted to membership in a limited liability company and who has not dissociated from that company." NMSA 1978, § 53-19-2M. Reid may be a manager in the common-sense manner a lay person may understand the term, as "manager" of a facility, but he does not meet the statutory definition of a manager.

-16-

member of MDA Consultants).  J. Archuleta does not contend that Reid meets the statutory definition of "manager."  Because, according to the Defendants, Reid is not a manager or member of either Taos Living Center or MDA Consultants this statute does not apply, and the Court need not apply Louisiana limited liability law to determine Reid's liability.  Instead, the Court will apply New Mexico state law to determine Reid's individual liability, because J. Archuleta alleges tort actions against Reid, and, in tort actions, New Mexico courts follow the doctrine of lex loci delicti commissi and apply the law of the place where the wrong took place -- the location of the last act necessary to complete the injury -- which, in this action, was New Mexico.  See Torres v. State, 119 N.M. 609, 613, 894 P.2d 386, 390 (1995).  See also Complaint ¶¶ 1, 19-22, at 1, at 5-6 (stating that the alleged torts occurred in New Mexico).

There is a possibility that J. Archuleta could state a viable claim for negligence against Reid. Generally, a negligence claim requires the existence of a duty that a defendant owes to a plaintiff, breach of that duty, which is typically based on a standard of reasonable care, and the breach being a cause-in-fact and proximate cause of the plaintiff's damages.  See Herrera v. Quality Pontiac, 134 N.M. 43, 47-48, 73 P.3d 181, 185-86 (2003).  "In New Mexico, negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person." Ramirez v. Armstrong, 100 N.M. 538, 541, 673 P.2d 822, 825 (1983), overruled on other grounds by Folz v. State, 110 N.M. 457, 460, 797 P.2d 246, 249 (1990).  Although the Defendants argue that Reid's "liability would be subsumed into Taos Living Center's liability," Response at 3, J. Archuleta alleges that Reid was negligent, and Reid is liable to third persons injured by his tortious actions or omissions regardless whether Taos Living Center is also liable.  See Stinson v. Berry, 123 N.M. 482, 486-87, 943 P.2d 129, 133-34 (Ct. App. 1997)(stating that "Directors are liable to third persons injured by their own tortious conduct . . . regardless of whether the corporation is also liable," that

-17-

"if corporate directors engage in tortious conduct, . . . . they can be personally liable for the injuries suffered as a result of that conduct," and that "[a] corporate officer, like every other individual, has duties not to engage in conduct that creates an unreasonable risk of harm to another"); Brophy v. Ament, No. CIV 07-0751 JB/KBM, 2009 WL 5206020, at *4-5 (D.N.M. Nov. 20, 2009)(Browning, J.)(recognizing that New Mexico courts have held that "an officer or director of a corporation acting within the scope of his corporate duties may be personally liable for a tort injuring a third party, so long as the director or officer has a duty to that third party")(citation omitted).  The Court of Appeals of New Mexico has stated:

> Thus, for example, if John had been driving a corporate vehicle on corporate business and been involved in an accident in which Decedent was injured, he would be liable for his own negligence in driving simply because he had a duty to drive with reasonable care.  The duty of the driver arises irrespective of the driver's employment by the corporation. Everyone driving a vehicle on the highway owes to other drivers, passengers, and pedestrians a duty to exercise due care. John, as an individual, may have owed Decedent such a duty under the circumstances of this case.

Stinson v. Berry, 123 N.M. at 488, 943 P.2d at 135.  It is thus possible that Reid could be individually liable to J. Archuleta for his own negligence.[8]

---

[8] The Defendants rely on the Court's previous decision in Brophy v. Ament, No. CIV 07-0751 JB/KBM, 2008 WL 4821610 (D.N.M. July 9, 2008), for the proposition that Reid cannot be liable to J. Archuleta, because there is

> *no exception*, even under New Mexico law, for liability against the employees of the LLC, i.e. non-owners for whom the LLC is liable under respondeat superior in the absence of an independent basis for liability such as intentional acts tortous acts [sic], as explained by this Court in *Brophy* and cases cited by the Court therein.

Supplemental Brief at 6 (emphasis in original).  The Defendants argue that there are no facts alleged in the Complaint that would bring Reid's actions under Brophy v. Ament.  In Brophy v. Ament, the Court addressed whether the plaintiffs' complaint stated a cause of action for personal liability against the defendants "for individual involvement in the alleged wrongdoing from which the limited liability structure of their Lincoln County Auto Brokers, LLC did not shield them."  2008 WL 4821610, at *1.  The Court found that New Mexico law indicates "that an agent of a

It is reasonably possible that Reid owed a duty of care to R. Archuleta.  New Mexico courts

have stated that foreseeability of a plaintiff alone does not end the inquiry into whether the defendant

corporation, or member of a limited liability company, may be held liable for the consequences of his or her own acts or omissions, including tortious acts."  2008 WL 4821610, at *1.  The Court stated:

> A corporate structure does not shield a person from his or her personal involvement in tortious conduct[.] It protects a shareholder or member from vicarious liability, but if the shareholder or member is involved in the tortious conduct, he or she can be sued like any other employee or any person who does not work for a corporation. The mere existence of a corporation does not shield a person from liability for tortious conduct.
>
> Ament and Fisk contend that all transactions, including the execution of the purchase agreement and other transactions, involving the sale of the vehicle in this cause of action did not involve either of them, individually, and that everything the Plaintiffs did was with Lincoln County Auto Brokers. Ament and Fisk assert that all dealings with the Plaintiffs in this case went through Lincoln County Auto Brokers, and that Ament and Fisk never dealt in any individual capacity or any other capacity other than through Lincoln County Auto Brokers in all transactions with the Plaintiffs. As noted above, however, the Plaintiffs' allegations suggest otherwise -- that while Ament and Fisk had no personal involvement in the initial vehicle transaction -- they were both personally involved in actions after the initial transaction. Moreover, the Complaint alleges that both Fisk and Ament took numerous personal actions that affected the Plaintiffs. The face of the Complaint suggests that these personal actions may have been tortious conduct. Thus, regardless of whether Ament and Fisk were or were not within the scope of their position within the LLC, their possible tortious conduct makes them personally liable.

2008 WL 4821610, at *10.  The Court found that the complaint adequately made allegations that may have made the individual defendants personally liable, stating that the complaint alleged that the individual defendants took "numerous personal actions that affected" the plaintiffs and that the face of the complaint suggested that "these personal actions may have been tortious conduct." 2008 WL 4821610, at *11.  The Court did not state that "actionable conduct includes an element of scienter."  Supplemental Brief at 5.  Instead, the Court stated that agents or members of a limited liability company may be liable for the consequences of his or her own acts or omissions.  See 2008 WL 4821610, at *1.  New Mexico law indicates that an employee of a limited liability company is liable for his or her own negligence.  See Stinson v. Berry, 123 N.M. at 488, 943 P.2d at 135.  Reid may thus be liable for his own negligence, and J. Archuleta did not need to allege that Reid committed an intentional tort.  This ruling is in accord with the Court's opinion in Brophy v. Ament. See Brophy v. Ament, 2008 WL 4821610, at *10 ("A corporate structure does not shield a person from his or her personal involvement in tortious conduct[.]").

-19-

owed a duty to the plaintiff.  See Herrera v. Quality Pontiac, 134 N.M. at 48, 73 P.3d at 186.  The New Mexico courts have recognized that, "[u]ltimately, a duty exists only if the obligation of the defendant [is] one to which the law will give recognition and effect."  Herrera v. Quality Pontiac, 134 N.M. at 49, 73 P.3d at 187 (internal quotation marks and citation omitted).  To determine whether the obligation of the defendant is one to which the law will give recognition and effect, courts consider legal precedent, statutes, and other principles of law.  See Herrera v. Quality Pontiac, 134 N.M. at 48, 73 P.3d at 186.  Reid was a nursing home administrator for Taos Living Center, LLC.  See Deposition of Paul Reid at 72:8-11 (taken July 19, 2010), in Levato v. Taos Living Center, LLC, Case No. D-820-CV-2009-00134, filed February 18, 2011 (Doc. 18-1).  The New Mexico Administrative Code states that "[a] nursing home shall be supervised by an administrator licensed under the Nursing Home Administrators Act, Sections 61-13-16 through 61-13-16 NMSA 1978[;] [s]upervision shall include, but not be limited to, taking all reasonable steps to provide qualified personnel to assure the health, safety, and right's [sic] of the residents."  NMAC 7.9.2.26. Furthermore, while the New Mexico courts have not decided this legal issue whether an administrator licensed under the Nursing Home Administrators Act could be held liable for negligence if the nursing home he or she supervises injures a patient, New Mexico law supports finding that Reid might possibly have owed R. Archuleta a duty of care.  New Mexico courts have found that a hospital owes a duty to act with reasonable care in furnishing services to patients, see Eckhardt v. Charter Hosp. of Albuquerque, Inc., 124 N.M. 549, 559, 953 P.2d 722, 732 (Ct. App. 1997); Diaz v. Fiel, 118 N.M. 385, 389,  881 P.2d 745, 749 (Ct. App. 1994)("[I]t is beyond question in New Mexico that a hospital owes an independent duty of care to patients at the hospital."), that physicians have a legal duty to use reasonable care in treating a patient, see Wilschinsky v. Medina, 108 N.M. 511, 512, 775 P.2d 713, 714 (1989), and that an employer owes a duty of care towards

members of the public who might foreseeably be injured as a result of the hiring of an employee, see Valdez v. Warner, 106 N.M. 305, 307, 742 P.2d at 517, 519 (Ct. App. 1987).  Furthermore, the New Mexico Uniform Jury Instructions state that "[e]very person has a duty to exercise ordinary care for the safety of the person and the property of others."  NMRA 13-1604 UJI.  It is possible that New Mexico courts would analogize the case law to this situation and find that Reid, who, as a licensed administrator, had a duty under the New Mexico Administrative Code to take reasonable steps to provide qualified personnel to assure the residents' health, safety, and rights, owed R. Archuleta a duty of reasonable care.  In her Complaint, J. Archuleta alleges that Reid owed R. Archuleta a duty of care.  She alleges that Reid was the administrator of Taos Living Center, and that he was required to be licensed and was responsible for managing the facility.  She also alleges that the Defendants owed a duty to their residents to provide care, treatment and services within accepted standards of care of nursing homes and a duty to hire, train and supervise employees to deliver care in a safe and beneficial manner.  There is thus a reasonable basis in the alleged facts and in the applicable law to find that Reid owed R. Archuleta a duty of care.

It is reasonably possible that Reid breached his duty of reasonable care.  In a previous deposition, Reid testified that, "as an administrator, one of [his] roles [wa]s to make sure [his] facility [wa]s complying with the state and federal regulations."  Deposition of Paul Reid at 72:8-11 (taken July 19, 2010), filed February 18, 2011 (Doc. 18-1).  Reid testified that, as the nursing home administrator, he was responsible for ensuring that the appropriate systems, policies, and procedures were in place at the nursing home, and that it was his role to make sure that the policies and procedures were being implemented in the facility and that he was "ultimately responsible for making sure that the residents at the facility receive appropriate care."  Reid Depo. at 42:17-21, 43:17-44:3.  Reid's job "is to make sure that the nursing home is clean, that it has sufficient number

of competent staff."  Supplementary Affidavit of Paul Reid ¶ 36, at 6 (sworn February 15, 2011),

filed February 15, 2011 (Doc. 17-1).  In her Complaint, J. Archuleta alleges: (i) that the Defendants

-- including Reid -- failed to adequately assess, evaluate, and supervise nursing personnel to ensure

R. Archuleta received appropriate nursing care in accordance with the Defendants' policies and

procedures and state and federal regulations; (ii) that the Defendants failed to adopt guidelines,

policies, and procedures for documenting, maintaining files, investigating, and responding to any

complaint regarding the quantity of resident care, the quality of patient or resident care, or

misconduct by employees; (iii) that the Defendants failed to adequately hire, train, supervise, and

retain a sufficient amount of competent and qualified registered nurses, licensed vocational nurses,

nurse assistants, and other personnel in the facility to ensure that R. Archuleta received care,

treatment and services in accordance with the Defendants' policies and procedures, state and federal

laws and regulations; (iv) that the Defendants failed to increase the number of nursing personnel at

Taos Living Center to ensure that R. Archuleta received the necessary care; and (v) that the

Defendants failed to provide sufficient numbers of nursing personnel and failed to provide adequate

supervision to nursing staff to protect the residents' physical and mental well being.  Because it is

possible, under New Mexico law, that Reid had a duty to exercise reasonable care to assure the

health, safety, and rights of the nursing home residents, and because J. Archuleta has alleged that

Reid failed to adequately assess, evaluate and supervise nursing personnel, failed to adopt policies

and procedures for documenting complaints, failed to retain sufficient competent personnel, and

failed to provide sufficient supervision of personnel, there is a reasonable basis in the alleged facts

and law that Reid breached the alleged duty of care that he owed R. Archuleta.

There is a reasonable possibility that Reid's alleged breached caused R. Archuleta's alleged

damages.  In her Complaint, J. Archuleta alleges that R. Archuleta suffered injuries and harm,

including clostridium difficile, diarrhea, bedsores, pain and suffering, septic shock, mental anguish, humiliation, and wrongful death.  J. Archuleta alleges that R. Archuleta's injuries were of a kind which do not ordinarily occur absent negligence, that R. Archuleta was under the Defendants' exclusive control and management, and that her injuries and wrongful death were a proximate result of the Defendants' actions or omissions, such as the failure to provide sufficient numbers of personnel and the failure to provide adequate supervision to nursing staff.  Given these allegations, it is possible that Reid's alleged breach contributed to bring about the injury and that, without Reid's alleged breach, the injury would not have occurred.  See Tafoya v. Seay Bros. Corp., 119 N.M. 350, 352, 890 P.2d 803, 805 (1995)("Proximate cause is that which in a natural and continuous sequence . . . produces the injury and without which [the] injury would not have occurred.")(internal quotation marks and citation omitted); NMRA 13-305 UJI.

Because it is possible that Reid owed R. Archuleta a duty of care, that he breached that duty of care, and that the breach caused R. Archuleta's damages, the Court finds that J. Archuleta has a possibly viable negligence claim against Reid.  Because J. Archuleta has a possibly viable negligence claim, the Court finds that J. Archuleta did not fraudulently join Reid.  See Montano v. Allstate Indemnity Co., 2000 WL 525592, at *2; Nerad v. AstraZeneca Pharms., Inc., 203 F. App'x at 913.  Removal of the action was thus improper, because no federal jurisdiction currently exists. See 28 U.S.C. § 1332.  Because the Court does not currently have jurisdiction over this action, the Court will remand the case to the Eighth Judicial District Court.

While the Defendants might prefer that the Court quit saying it is "possible" that J. Archuleta may have a claim for negligence against Reid, and go ahead and decide the issue, the Court, as a federal court, should not do so.  The liberal standards that the Tenth Circuit articulated in Montano v. Allstate Indemnity Co. and Nerad v. AstraZeneca Pharms., Inc. are for a reason: if the federal

court does not have jurisdiction over the case, it should not be deciding legal issues, particularly ones that the state courts have not definitively addressed.  Thus, this Court must go no further -- as unsatisfactory as that may be to all parties and the Court -- than finding that J. Archuleta may possibly have a claim against Reid for negligence under state law.

## II.      THE COURT WILL DENY J. ARCHULETA'S REQUEST FOR COSTS AND FEES.

J. Archuleta asks the Court to order the Defendants to bear costs and expenses, including attorneys fees, incurred as a result of the removal, because the Defendants improvidently removed the case.  "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).  The Supreme Court has relatively recently clarified the standards governing an award of fees under § 1447(c) in a case from the United States District Court for the District of New Mexico and from the Tenth Circuit.  In Chief Justice Roberts' first written opinion for the Supreme Court, the Supreme Court stated: "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).  It is not necessary that the plaintiff show that the defendants acted in bad faith to win attorney's fees.  See Topeka Housing Auth. v. Johnson, 404 F.3d 1245, 1248 (10th Cir. 2005). The Court finds that the Defendants made good-faith arguments, with supporting authority, that removal was appropriate.  J. Archuleta's notice pleading under New Mexico pleading law complicated the analysis, given the more rigorous pleading requirements under federal law. Moreover, New Mexico courts have not yet definitively addressed the precise cause of action that J. Archuleta alleges against Reid.  While the Court does not agree that Reid was fraudulently joined, the Court cannot say that it is objectively unreasonable.  The Court will therefore deny J. Archuleta's

requests for costs and fees under 28 U.S.C. § 1447(c).

     **IT IS ORDERED** that: (i) the Plaintiff's Motion to Remand, filed December 29, 2010 (Doc. 5) is granted in part and denied in part; (ii) the Defendant's Motion for Leave to File Supplemental Brief in Support of Defendant's Opposition to Plaintiff's Motion to Remand, filed February 15, 2011 (Doc. 17) is granted; (iii) the Court remands this case to the District Court of Taos County, Eighth Judicial District, New Mexico; and (iv) the Court denies Plaintiff Judy Archuleta's request for fees and costs.

 

UNITED STATES DISTRICT JUDGE

*Counsel:*

Dusti Harvey
Jennifer J. Foote
Harvey Law Firm, LLC
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Frank Alvarez
Arlene A. Wiese
Hermes Sargent Bates
Dallas, Texas

     *Attorneys for the Defendants*